UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————
                                                               )
WILLIAM K. BLOCHER, In his capacity as Next    )
Friend and Parent of Ju. B. and Jo. B., and         )
GERALD BLOCHER,                                         )
                                                               )
                            Plaintiffs,                        )
                                                               )    Civil Action No. 12-10174-GAO
v.                                                              )
                                                               )
BARRY BLOCHER, Individually and as Trustee     )
of the Rochela Blocher 2000 Irrevocable Trust,    )
                                                               )
                            Defendants.                      )
———————————————————————)

**REPORT AND RECOMMENDATION ON THE PARTIES'
CROSS MOTIONS TO ENFORCE THE SETTLEMENT AGREEMENT**
[Docket Nos. 28, 30]

August 16, 2013

Boal, M.J.

        This action concerns the administration of the Rochela Blocher 2000 Irrevocable Trust

(the "Trust") established by the parties' mother.  The parties filed separate motions to enforce a

settlement agreement resulting from a mediation session on January 4, 2013.  Docket Nos. 28,

30.  The parties subsequently resolved most of the disputes, except for one pertaining to the

amount of money "left" in a bank account.  Docket No. 43.  For the following reasons, this Court

recommends[1] that the District Court grant the remaining component of plaintiffs' motion and

deny the remaining component of defendant's motion.

———————————————

        [1] On June 5, 2013, the District Court referred the subject motions to this Court for a
Report and Recommendation.  Docket No. 44.

1

## I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs William K. Blocher ("Bill"), in his capacity as next friend and parent of Ju. B. and Jo. B., and his brother Gerald Blocher ("Gerry") filed this action on January 30, 2012. Docket No. 1.  Their complaint asserted six counts[2] against defendant Barry Blocher ("Barry"), as an individual and as Trustee, pertaining to his allegedly improper administration of Trust assets.  See Docket No. 1 ¶¶ 99-129.  Barry also asserted two counterclaims against Plaintiffs. See Docket No. 6.  At the request of the parties, the District Court issued an order on October 15, 2012 referring the matter to mediation.  Maynard Aff. ¶ 5; Docket No. 20.[3]

The parties mediated the case on January 4, 2013.  See Docket Entry dated January 4, 2013.  At the conclusion of the mediation, Judge Sorokin stated on the record that the parties had reached a settlement.  See Docket No. 34.  He explained that he would state the terms of settlement and then ask the attorneys whether the terms were correct and complete.  Id. at 2/6-9. Once the attorneys agreed that the settlement terms were accurate, he would ask the parties if they agreed to the settlement.  Id. at 2/9-12.  He then proceeded to state the settlement terms.

In particular, Judge Sorokin stated: "Barry Blocher, in his capacity as trustee, will distribute to the beneficiaries of the trust all of the money that's left in the reserve as of today [January 4, 2013], except for $5,000, which will be held in the trust as a reserve for accounting fees and the like…."  Id. at 2/21-24.

As Judge Sorokin outlined the settlement terms, counsel corrected certain terms and added others.  See id. at 3/6-21, 4/19-25.  Judge Sorokin incorporated counsels' corrections on

---

[2] On July 9, 2012, the District Court granted Barry's motion to dismiss Count I of the complaint charging him with unfair and deceptive practices.  Electronic Clerk's Notes dated July 9, 2012.

[3] "Maynard Aff. _" refers affidavit of defendant's counsel in support of his motion to enforce the settlement agreement.  Docket No. 31.

the record.  See id.  Neither side disputed or sought to clarify the quoted provision pertaining to

the distribution of the reserve assets.  After going over the settlement terms, Judge Sorokin asked

counsel whether there was anything that he had omitted.  Id. at 5/7.  Counsel for both sides

indicated that there was nothing else to add.  Id. at 5/7-11.  All of the parties then agreed to the

terms as stated.  Id. at 5/14-25, 6/1-3.

Counsel for the parties thereafter exchanged emails in attempts to reduce the oral

agreement to writing.  See Maynard Aff. ¶¶ 11-15 & Exs. C-H.  During this exchange, Barry

provided to Bill and Gerry a list of disbursements paid out of the Trust reserve.  Maynard Aff. ¶

14 & Ex. G at 3.  The list included the following three disbursements:

| | | |
|---|---|---|
| Bulkley Richardson | 1/3/2013 | $30,379.05 |
| Hinckley Allen & Snyder | 1/4/2013 | $6,203.50 |
| Bulkley Richardson | 1/14/2013 | $14,076.54 |
| TOTAL | | $50,659.09 |

Docket No. 43 Ex. 1 at 3 ¶ 2.  The January 3, 2013 check was issued the day prior to the

mediation and delivered to Barry's counsel on the morning of the mediation.  See Second

Maynard Aff. ¶ 2.[4]  The January 4, 2013 check was issued on the day of the mediation.  At oral

argument, Barry informed the Court that the check was issued after the mediation concluded.

The January 14, 2013 check was issued ten days after the mediation.  See id. at ¶ 3.  None of the

checks had cleared the Trust reserve account as of the date of the mediation.  Docket No. 30 at 7-

8.

Counsel failed to resolve whether these disbursements should be charged to the Trust or

refunded and distributed to the Trust beneficiaries.  See Maynard Aff. Exs. F-H.  In other words,

they failed to resolve whether the funds subject to those disbursements were "left" in the account

---

[4] "Second Maynard Aff. _" refers to the second affidavit of defendant's counsel in
support of his motion to enforce the settlement agreement.  Docket No. 38.

3

on the day of mediation.  On January 18, 2013, the parties filed their respective motions to

enforce the settlement.  Docket Nos. 28, 30.  Docket Nos. 28, 30.  The parties opposed each

other's motions on January 31, 2013.  Docket Nos. 32, 33.  On February 5, 2013, Barry

submitted a reply brief in support of his motion.  Docket No. 37.

On May 29, 2013 the parties filed a joint letter informing the Court that they had

narrowed the issues in dispute.  Docket No. 43.  The parties attached to their letter a settlement

agreement, executed by all parties, in which they explained that:

> the sole issue to be adjudicated by the Court shall be whether the disbursements
> made in January, 2013 from the Trust in the amount of $50,659.09, as described
> herein, shall be charged to the Trust under the terms of the conceptual agreement
> reached at mediation or shall be refunded to the Trust by Barry.

Docket No. 43 Ex. 1 at 3 ¶ 2.

## II.    DISCUSSION

Bill and Gerry move the Court to enforce the settlement agreement by ordering Barry to

refund the contested distributions and disburse the Trust reserve's bank balance as of January 4,

2013.  Docket No. 30 at 8; Docket No. 32 at 2.  Barry moves the Court to enforce the settlement

based on his position that no portion of the contested amount need be refunded.  Docket No. 29

at 1-2.

### A.    Legal Background

Settlement agreements enjoy great favor with the courts "as a preferred alternative to

costly, time-consuming litigation."  Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st

Cir. 2008) (citing Mathewson Corp. v. Allied Marine Indust., Inc., 827 F.2d 850, 852 (1st Cir.

1987)).  A party to a settlement agreement may seek to enforce the agreement's terms when the

other party refuses to comply.  Id. (citing Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir.

CRITICAL

1999)).   Where, as here, the underlying action is still pending before a court, it has the power to enforce a settlement.  See Quint v. A.E. Staley Mfg. Co., 246 F.3d 11, 14 (1st Cir. 2001).

A trial court may not, however, summarily enforce a purported settlement agreement if there is a genuinely disputed question of material fact regarding the existence or terms of that agreement.  Malave, 170 F.3d at 220.  In such circumstances, a court instead must take evidence to resolve the contested issues of fact.  Id.  A court may not summarily deny enforcement simply because material facts are in dispute: the task is to resolve the dispute.  Bandera v. City of Quincy, 344 F.3d 47, 52 (1st Cir. 2003).

B.      The Amount Left In The Reserve

The parties have stipulated and agreed that the settlement "entered on the record is enforceable and shall be enforced by the Court."  Docket No. 43-1 at 2-3 ¶ 2.  The Court's only remaining task is to interpret and enforce the term of the settlement that remains in dispute. Specifically, the Court must interpret the settlement term requiring Barry to distribute to the Trust beneficiaries "all of the money that's left in the reserve as of [January 4, 2013]" less $5,000 to remain in the reserve for future expenditures.  Docket No. 34 at 2/21-24.[5]

A settlement agreement is a contract and its enforceability is determined by applying general contract law.  Sparrow v. Demonico, 461 Mass. 322, 327 (2012) (citation omitted).[6]

---

[5] At oral argument, the parties informed the Court that they had resolved all other issues contained in their motions.  Notably, plaintiffs' request to contest the reasonableness of the attorneys fees and the parties' requests for sanctions and/or fees in bringing the motions are no longer before the Court.

[6] It is likely, but not clear, that Massachusetts law applies to this dispute.  Components of the settlement agreement are governed by Massachusetts law, see Docket No. 43-1 Ex. C, and both of the Plaintiffs reside in Massachusetts.  Docket No. 1 ¶ 1.  Barry resides in Connecticut. Id. at ¶ 3.  The record is unclear regarding the location of the Trust reserve and the place of performance.  The Trust is governed by Connecticut law.  Docket No. 1, Ex. A Art. XI, § E. However, neither party has engaged in a choice of law analysis.  Normally, the first step in

When a contract is unambiguous, a court will enforce the plain meaning of its terms.  Alvin J. Coleman & Son, Inc. v. Francis Harvey & Sons, Inc., No. 12-40068-TSH, 2012 WL 3686641, *2 (D. Mass. Aug. 23, 2012) (citing Freelander v. G. & K. Realty Corp., 357 Mass. 512, 514 (1970)).  "To answer the ambiguity question, the court must first examine the language of the contract by itself, independent of extrinsic evidence concerning the drafting history or the intention of the parties."  Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 783 (1st Cir. 2011). Extrinsic evidence may be considered only in the construction of ambiguous contract language. Indus Partners, LLC v. Intelligroup, Inc., 77 Mass. App. Ct. 793, 795 (2010) (internal quotation and citation omitted).

Ambiguity, however, is not created merely because the litigants disagree about the meaning of a contract.  Nicolaci v. Anapol, 387 F.3d 21, 26 (1st Cir. 2004).  Rather, "a contract is only ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken."  Farmers Ins., 632 F.3d at 783.

This Court finds that the provision is unambiguous.   The term "left" means "to cause or allow to be or remain available."  Merriam-Webster's Dictionary, available at <http://www.merriam-webster.com/dictionary/leave>.  The phrase "all of the money that's left in the reserve" as of January 4, 2013 means the money remaining in the bank account as of January 4, 2013.  The checks dated January 3rd and January 4th had not cleared the bank account as of that

---

applying choice of law principles is to ascertain whether the choice will affect the outcome; in other words, whether there is an actual conflict of laws.  See Williams v. Astra USA, Inc., 68 F. Supp. 2d 29, 36 (D. Mass. 1999).  None of the parties have raised the substantive law of any jurisdiction other than Massachusetts.  Given that the parties did not raise a conflict-of-laws issue, it is deemed that none exists.  Id.; see also Doricent v. Am. Airlines, Inc., No. 91-12084Y, 1993 WL 437670, at *8 (D. Mass. Oct. 19, 1993).

date.  Docket No. 30 at 7-8.  The January 14th check was not even executed until ten days after the agreed-upon cutoff date.  The $50,659.09 at issue was therefore "left in the reserve" as of January 4, 2013.

This interpretation is consistent with the plain language of the provision.  The word "left," coupled with the January 4, 2013 date, leaves no room for Barry's interpretation that certain costs should be excluded from "all the money that's left."  Barry insists that such a construction would lead to the absurd result that the Trust would be unable to pay for debts incurred in defense of this litigation and through mediation.  See Docket No. 33 at 6-7.  This argument is unpersuasive.  First, the argument does not bear on whether the term is ambiguous.  Rather, it appears to challenge whether Barry assented to the term.  As the First Circuit has stated: "Courts determine … mutual assent, not on the basis of what goes on inside the parties' heads, but rather on the basis of what they say and do."  Salem Laundry Co. v. New Eng. Teamsters & Trucking Indus. Pension Fund, 829 F.2d 278, 280 (1st Cir. 1987).

In retrospect, Barry may find the plain language of the term problematic, but he and his lawyer agreed to it in the context of a settlement.  He does not dispute that he had authority, as Trustee and in his own capacity, to settle the case.  Indeed, Judge Sorokin ordered that "[c]ounsel and principals are directed to be present and to have full settlement authority."  See Electronic Clerk's Notes dated October 18, 2012.  When Judge Sorokin stated this settlement term on the record, Barry did not ask for clarification or otherwise dispute the settlement language.  In the context of a settlement, parties often agree to terms that are disadvantageous to them because they derive an overall benefit from the settlement.[7]

---

[7] Barry argues that the exculpatory provision in the Trust agreement forecloses this option.  Docket No. 33 at 6.  However, the pertinent provision states: "If the Trustees become liable, as trustees, to any person who is not a beneficiary in connection with matters not within

Accordingly, this Court finds no ambiguity in the disputed settlement term and finds the Plaintiffs' interpretation to be consistent with the plain meaning of the disputed term.

## III.  CONCLUSION

For the foregoing reasons, this Court recommends that the District Court:

1)  GRANT the remaining component of Plaintiffs' motion (Docket No. 30);

2)  DENY the remaining component of Barry's motion (Docket No. 28); and

3)  ORDER that the contested disbursements be refunded to the Trust and disbursed to the Trust beneficiaries.

## IV.  REVIEW BY A DISTRICT COURT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d

---

the Trustees' control and not due to the Trustees' own actual fraud, gross negligence or willful misconduct, the Trustees shall be entitled to indemnity out of the trust's assets."  Docket No. 1 Ex. A, Art. 8, § C.  While the exculpatory clause protects the Trustees in certain situations, that clause does not change the unambiguous language to which Barry agreed.

343 (1st Cir. 1993).

                            /s/ Jennifer C. Boal         
                            JENNIFER C. BOAL
                            United States Magistrate Judge